UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v. Criminal Action No. 3:19-cr-55-DJH

AVERIC LYLE BIZOR, Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Averic Lyle Bizor contends that the United States breached its plea agreement with him in an earlier case by pursuing the charge in the current indictment. (Docket No. 20) Bizor argues that he relied on the United States' promise not to prosecute that charge when signing the plea agreement. (*Id.*, PageID # 38) Bizor now seeks dismissal of the indictment (D.N. 1) pursuant to the Due Process Clause, arguing that the plea agreement should be enforced and the government should be estopped from pursuing the current charge. (D.N. 20, PageID # 37, 39) The issue was briefed and the Court held oral argument on August 7, 2019. (D.N. 28) No supplemental briefs were filed. For the reasons explained below, the Court will deny Bizor's motion.

**I.**

In 2017, Bizor was charged with three counts of being a felon in possession of firearms and ammunition. (D.N. 20) On January 19, 2018, the United States sent an email to Bizor's counsel which included a draft plea agreement and plea supplement for those three charges. (D.N. 20-1) In the email, the Assistant United States Attorney advised Bizor's counsel that the United States was also contemplating adding a fourth charge for an additionally discovered firearm. (*Id.*) The AUSA noted that this fourth firearm may have been used in a murder, and that the government

1

could therefore request a cross-reference to the homicide guidelines at sentencing, raising Bizor's guideline range. (*Id.*) He stated that the United States would not include the fourth firearm in the indictment, however, if Bizor agreed to plead guilty to the three charges. (*Id.*) The prosecutor noted that it would be "important" for Bizor to understand that he would need to be fully debriefed about any crimes he committed or knew about "or the deal is off." (*Id.*) The email also explained that it was just "a preliminary offer subject to formal approval by the United States Attorney." (*Id.*) Bizor did not accept the cooperation condition included in the January draft plea agreement, however. (D.N. 24-2, PageID # 99) Instead, Bizor pleaded guilty to the three charged offenses in a later plea following a change-of-plea hearing before Magistrate Judge Colin H. Lindsay on July 25, 2018. (D.N. 21-3; D.N. 24)

During the change-of-plea hearing, the AUSA stated that he would like to put a modification to the plea agreement on the record. (D.N. 24-2, PageID # 94-95) The United States and Bizor's counsel had come to an agreement prior to the hearing that the AUSA would state publicly the government's promise not to seek the homicide cross-reference in order to enhance Bizor's sentence. (*Id.*) Accordingly, the AUSA stated that the "United States has agreed that [it] will not seek to apply the cross-reference to the homicide guideline" and that he was speaking on the record "to avoid any confusion about the guidelines that would apply to that." (*Id.*) Bizor's counsel concurred, stating that the parties' agreement "was that [the United States] would not attempt to increase the guidelines through the homicide statute." (*Id.*, PageID # 96) The AUSA noted that if Bizor were to ultimately be charged, "it would be a separate and distinct case subject to completely new analysis and would not have anything to do with the guidelines in this case. (*Id.*) Judge Lindsay then asked whether the following characterization of the in-court modification was correct: "The agreement relates to the cross-reference and sentence in this case. It's not an

2

agreement not to investigate or prosecute anything else—some crime not yet charged." (*Id.*, PageID # 97) Bizor's counsel and the AUSA agreed. (*Id.*) Judge Lindsay asked Bizor if he agreed with that description of the plea agreement, and Bizor replied in the affirmative. (*Id.*) Finding that Bizor understood his plea and entered into it voluntarily, Judge Lindsay recommended that Bizor's guilty plea be accepted. (*Id.*, PageID # 98-99) U.S. District Judge Rebecca Grady Jennings then accepted Bizor's guilty plea pursuant to his plea agreement. No. 3:17-cr-120-RGJ (D.N. 33)

On April 2, 2019, the United States returned the indictment at issue charging that fourth firearm offense which was not included in the 2017 indictment. (D.N. 1)

Bizor asserts that the January 2018 email was a memorialization of previous settlement negotiations and that he relied on the government's assurance when pleading guilty to the three charged offenses. (D.N. 20, PageID # 38) Bizor argues that by pursuing this charge, the United States breached the July 2018 plea agreement. (*Id.*, PageID # 38; D.N. 21-3) He suggests that the current charge is a "stopgap" to hold him in federal custody because he is a suspect in an unrelated state murder investigation. (*Id.*)

The United States maintains that the email was a preliminary offer, conditioned on Bizor's cooperation with the United States. (D.N. 21, PageID # 43-44) Because Bizor did not accept the cooperation condition, the United States contends that this preliminary offer is therefore void. (*Id.*)

**II.**

On a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *United States v. Musgrave*, No. 3:11-cr-183, 2012 U.S. Dist. LEXIS 130461, at *3 (S.D. Ohio Sept. 13, 2012) (citing *United States v. Campbell*, No. 02-80863, 2006 U.S. Dist. LEXIS 16779, at *2 (E.D. Mich. Apr. 6, 2006)). "An indictment returned by a legally constituted and unbiased grand jury,

3

like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *United States v. Costello*, 350 U.S. 359, 363 (1956).

Acceptance of a plea agreement "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello v. New York*, 404 U.S. 257, 261 (1971). "Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* "The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be known." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984).

Once the district court has accepted the plea agreement, the Sixth Circuit has traditionally regarded the agreement as a type of contract and "has analyzed the respective obligations of the prosecution and the defendant under general principles of contract law." *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993). "In determining whether a particular plea agreement has been breached, the Court looks to 'what the parties to th[e] plea agreement reasonably understood to be the terms of the agreement.'" *Id.* at 375 (internal citations omitted).

Bizor does not dispute that the terms of the written plea agreement do not preclude the government from prosecuting the present offense. He asserts instead that the January 2018 email is part of the plea agreement because it induced him to plead guilty. (D.N. 20, PageID # 37-38) Bizor argues that by proceeding with prosecution, the government breached the plea agreement. (D.N. 38) Prosecution of the current charge is not, however, inconsistent with Bizor's plea agreement because the agreement included a merger clause, and no promise to forgo prosecution was included in the written plea agreement or in the modification made in open court.

4

## A. January 2018 Email

In defining the terms of a plea agreement, the Sixth Circuit has been reluctant to include terms from pre-plea negotiations. *See United States v. Pough*, 20 F. App'x 345, 347 (6th Cir. 2001). In *Pough*, the defendant relied upon pre-plea bargain letters between his defense counsel and the prosecutor in arguing that the government breached its plea agreement when he did not receive a promised sentence. 20 F. App'x at 347. The court found no breach because a review of the agreement showed that the federal government made no such promise as to Pough's sentence. *Id.* Although various terms of imprisonment were discussed, none of the letters submitted by Pough contained any firm promises, and the court noted that the AUSA expressly stated in a letter written before Pough's guilty plea that he did not speak for and could not bind the government. *Id.* at 347. Thus, the Court found that Pough could not complain "that the bargain was other than what he openly and unequivocally declared in court." *Id.*

Courts have been especially reluctant to include such terms when the plea agreement includes language that it represents the entire understanding between the parties. *See United States v. Long*, 722 F.3d 257, 263-64 (5th Cir. 2013); *see also United States v. Alegria*, 192 F.3d 179, 185 (1st Cir. 1999) ("The appellant's position flies in the teeth of paragraph 22 of the Agreement, which states flatly that the written document constitutes the complete agreement between the parties . . . ."). In *Long*, the defendant argued that he relied upon pre-plea bargain emails stating that he would not receive a leader/organizer enhancement. 722 F.3d at 258-59. At sentencing, Long's counsel tried to enforce this purported agreement, citing the email exchange as evidence that the government agreed not to seek the enhancement. *Id.* at 261. Long asserted that the email exchange was part of the plea agreement because it reasonably induced him to plead guilty. *Id.* at 262 (internal citations omitted). The court rejected Long's argument because the email exchange

5

was not attached to the plea agreement; it was completed weeks prior to Long's guilty plea; and copies of the email were not transmitted contemporaneously with the plea. *Id.* at 262-63. The court found that based on Long's own responses during the plea colloquy, he did not rely on the email exchange in pleading guilty. *Id.* at 263-64. The court also held that any reliance on the email exchange would have been unreasonable in light of the plea agreement's merger clause. *Id.* at 264.

Here, it was not reasonable for Bizor to believe that any promise to forgo prosecution was included as part of the terms of his final plea agreement. A review of the final plea agreement reveals no such promise. (D.N. 21-3) *See Pough*, 20 F. App'x at 347. It is clear not only from the plea agreement but also from Bizor's change-of-plea colloquy that the promise to forgo prosecution was not part of the parties' final agreement. Further, any promise that was included in the email was expressly conditioned upon Bizor's cooperation with the United States (D.N. 20-1), and "a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement." *Skidmore*, 998 F.2d at 375 (quotations and internal citations omitted). As Bizor did not agree to cooperate, he did not accept the government's preliminary offer and no contract was formed on those terms. Even if the agreement in the email were considered an offer, and even if Bizor was found to have accepted, his failure to perform would render any promises void. *See Puckett v. United States*, 556 U.S. 129, 137 (2009) ("When the consideration for a contract fails . . . we say that the contract was broken.").

Bizor could not reasonably have relied upon the pre-plea bargain email for a number of other reasons. First, Bizor's plea agreement includes a merger clause stating:

> This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and the defendant in this case, are binding only on the parties to this Agreement, supersede all other understandings, if any, whether written or oral, and

6

> cannot be modified other than in writing that is signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

(D.N. 21-3, PageID # 54)  *See Long*, 722 F.3d at 264.  If Bizor had truly relied on a promise to forgo prosecution, presumably he would have insisted on it being in the final contract.

Second, the email was sent six months before Bizor ultimately pleaded guilty; it was not included with the plea agreement; and the plea agreement lacks any reference to the promise to forgo prosecution.  (D.N. 21-3)  *See Long*, 722 F.3d at 264.  Also, the email itself contained no firm promise; the AUSA stated that he was providing a mere preliminary offer, subject to formal approval.  (D.N. 20-1)  *See Pough*, 20 F. App'x at 347.  Third, it is clear from Bizor's own responses during the plea colloquy that he did not rely on the email exchange in pleading guilty. *See Long*, 72 F.3d at 263-64.  The magistrate judge asked Bizor: "[H]as anyone made you any other promises than what's set forth in the plea agreement and what has been stated in open court here by the lawyers in order to get you to agree to this plea?"  (D.N. 24-2, PageID # 97)  Bizor responded in the negative  (*id.*), and "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The Court thus gives significant weight to Bizor's response that no other promises or agreements existed.  *See Long*, 722 F.3d at 264.

Finally, at the hearing on this motion to dismiss, the Court raised the issue of the merger clause.  (D.N. 28, PageID # 105)  Bizor's counsel conceded that a promise to forgo prosecution was not included in the subsequent plea agreement, and that this plea agreement also contained a merger clause.  (*Id.*)  The Court addressed that the supposed "offer" in the email stated that it was contingent upon Bizor agreeing to be debriefed and cooperate.  (*Id.*, PageID # 107)  Bizor's counsel conceded this, and the AUSA confirmed that Bizor chose not to cooperate, and was not debriefed.

(*Id.*, PageID # 109) Bizor's counsel even took the time to note that at the change-of-plea colloquy, Bizor responded "no sir" to Judge Lindsay's inquiry as to whether there were any other promises beyond what is stated in the plea agreement or open court. (*Id.*, PageID # 110-11) In sum, the Court finds that Bizor's reliance on the email exchange was unreasonable and that the preliminary offer was not a part of the final plea agreement.

**B. Modification at the Change-of-Plea Hearing**

The AUSA's in-court statements do not serve to bolster Bizor's argument. The Court "[is] not at liberty to consider such parol evidence, since the plea agreement contained an integration clause specifying the agreement as written incorporated the complete understanding of the parties." *United States v. Malcom*, No. 95-1087, 1997 U.S. App. LEXIS 13892, at *24 (6th Cir. June 9, 1997) (citing *Bemis v. United States*, 30 F.3d 220, 222 (1st Cir. 1994)). It is true that the Supreme Court has said that no "*per se* rule" could be adopted "excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of factors such as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Blackledge*, 431 U.S. at 75. None of those exceptions are present, however. Even if the Court were to conclude that the AUSA's statements during the change-of-plea colloquy constituted a modification to the written plea agreement, the modification would not support Bizor's current argument. The prosecutor's in-court statements made no reference to a promise to forgo prosecution, and the Court was very clear with Bizor regarding the terms of the plea agreement. (D.N. 24-2) Bizor cannot plausibly argue that there was misunderstanding or misrepresentation.

In short, it was made clear during the change-of-plea hearing that any modification on the record was only with regard to the cross-reference and sentence, not an agreement to forgo

prosecution.  (*Id.*, PageID # 97)  Bizor told the court that he agreed with this characterization of the plea agreement.  (*Id.*)  Bizor thus "cannot now complain that the bargain was other than what he openly and unequivocally declared in court."  *Pough*, 20 F. App'x at 347.

### III.

No promise to forgo prosecution was included in the final plea agreement or in the modification made on the record during the change-of-plea hearing.  Bizor's reliance on the email exchange was unreasonable in light of the plea agreement's merger clause.  Therefore, the United States did not breach the plea agreement in bringing the current charge.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that

(1) Bizor's motion to dismiss the indictment (D.N. 20) is **DENIED**;

(2) The Court anticipates scheduling a status conference by subsequent order.

September 24, 2019

**David J. Hale, Judge**
**United States District Court**